# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

In Re: GenesisIntermedia, Inc.
Securities Litigation,

Civ. No. 03-3471 (RHK/AJB)

**MEMORANDUM OPINION
AND ORDER**

---

Peter A. Pease, Berman Devalerio Pease Tabacco Burt & Pucillo, Boston, MA; Ira M.
Press, Kirby McInerney & Squire, LLP, New York, NY; and Daniel C. Hedlund, Heins Mills
& Olson, PLC, Minneapolis, MN, for Plaintiffs.

James Windels, Davis Polk & Wardwell, New York, NY, and Michael E. Keys,
Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, for the Deutsche Bank
Defendants.

Greg A. Danilow and Seth Goodchild, Weil, Gotshal & Manges LLP, New York, NY, and
Daniel Bryden, Kelly & Berens, P.A., Minneapolis, MN, for the Nomura Defendants.

Teresa Kimker, Halleland Lewis Nilan & Johnson, Minneapolis, MN, for Defendant Wayne
Breedon.

---

## Introduction

Plaintiffs Amish Desai, Christopher and Therese Long, and Elizabeth Lamb

(collectively "Plaintiffs") brought this action alleging Defendants engaged in securities

fraud in violation of the federal securities statutes.  Before the Court is Plaintiffs' Motion

for Class Certification.  Defendants challenge the Motion alleging that Plaintiffs are not

adequate class representatives and that individual, rather than common, issues of law and

fact are predominant in this action.  For the reasons set forth below, the Court will deny

Plaintiffs' Motion.

**Background**

Many of the facts alleged in Plaintiffs' Complaint[1] have been detailed by the Court

in previous orders.  See, e.g., Stephenson v. Deutsche Bank AG, 282 F. Supp. 2d 1032 (D.

Minn. 2003).  Thus, the Court will only briefly discuss the underlying claims made by

Plaintiffs.  Defendants are GenesisIntermedia, Inc. ("Genesis"), Genesis's former Chief

Executive Officer (Ramy El-Batrawi), Genesis's former Chief Financial Officer (Douglas

Jacobson), Genesis's largest controlling shareholders (El-Batrawi, Adnan Khashoggi,

Ultimate Holdings, Ltd., and Deutsche Bank), Deutsche Bank Securities Limited, Deutsche

Bank Securities, Inc., Deutsche Bank AG, Wayne Breedon, Nomura Canada, Inc., Nomura

Securities International, Inc., Scott Reed, R.B.F. International, Inc., Kenneth D'Angelo, and

financial commentator Courtney Smith (collectively "Defendants").  (Compl. ¶ 1.)

Genesis is a Delaware corporation with its registered address in Van Nuys,

California, and is in the business of developing, among other things, internet kiosks in

shopping malls; its stock was offered to the public at $8.50 per share in the spring of 1999.

The scheme that Defendants perpetrated regarding Genesis stock allegedly caused Genesis

shares to increase from $12 per share to over $52 per share on a pre-split basis.  (Compl. ¶

3(c).)  Genesis voluntarily delisted its stock from the NASDAQ on January 29, 2002, and

its stock now trades for pennies a share.

---

[1]For simplicity, the Court will refer to Plaintiffs' "Third Consolidated Amended
Class Action Complaint" (Doc. No. 259) as the "Complaint."

Plaintiffs allege that Defendants orchestrated a sophisticated scheme in which Defendants manipulated the price of Genesis stock—a thinly traded security—thereby artificially inflating the price of the stock. "The scheme involved the active manipulation of Genesis' stock price (through both the release of materially false and misleading information about Genesis and the coordinated, manipulative and deceptive trading of Genesis shares) in order to maintain artificially . . . inflated market prices of Genesis stock and profit from the stock loans." (Compl. ¶ 68.) According to the Complaint, Defendants

> (i) secretly [paid] two purportedly independent and unrelated stock market analysts for approximately 19 separate, positive and baseless recommendations of Genesis stock made, *inter alia*, on financial television shows with national distribution, which recommendations were made as part of defendants' scheme to manipulate and inflate the price of Genesis' stock;

> (ii) [engaged] in a variety of undisclosed, manipulative and deceptive acts - such as establishing control over the supply of Genesis stock, financing and directing fraudulent trading activity designed to inflate the stock price, engaging in collusive trading at pre-set prices, and strategically intervening in the market on crucial occasions in order to support Genesis' share-price when it was threatened by adverse news concerning Genesis - intended to manipulate the market for and price of Genesis shares and to sustain Genesis' already-inflated share price; and

> (iii) [disseminated] false and misleading statements.

(Compl. ¶ 42.) Defendants were able to manipulate the stock, according to Plaintiffs, because they owned and controlled a majority of Genesis's outstanding stock. (Id. ¶ 3(b).) Plaintiffs claim that they were damaged because they "relied on the integrity of the market price of Genesis publically traded stock" (id. ¶ 45), but that price was artificially inflated due to Defendants' manipulation of the market.

3

**A.      The Named Plaintiffs and Their Complaint**

The named plaintiffs seek to represent a class consisting of all persons who

purchased Genesis common stock on the open market between December 21, 1999 and

September 25, 2001.  (Compl. ¶ 1.)  Lead plaintiff Desai bought 50,000 shares of Genesis

stock on September 25, 2001, the last day of the proposed class period.  (Compl. Ex. B.)

Roughly three weeks prior to that date, Genesis had announced that it planned to split its

stock "three for one" on September 25.  (Desai Dep. Tr. at 62-64.)  The stock split would

have caused the price of a single Genesis share to decrease.  Desai was aware of this

announcement, and on September 25, saw that the price of Genesis shares had gone down,

but had not decreased in a "three-to-one ratio," which suggested to Desai that the price

decrease was not due to the planned stock split.  (Id. at 65.)  Desai "did a little research" and

found that Genesis had decided to postpone the stock split, which meant, to Desai, that

"there was a lot of confusion on the street as to why the stock was ticking like that."  (Id. at

62-63.)  Apparently, some traders thought the stock was trading at a post-split price, when

in fact the stock had not been split.  Desai decided to buy his shares of Genesis stock on

September 25, 2001, because the "mass confusion among traders" over the stock split

"provided a compelling entry point" for him.  (Id. at 170-71.)

The Longs hold 100 shares of Genesis stock.  (Goodchild Decl. Ex. 7.)  The Long's

bought their Genesis shares in February 2000, after watching a television program in which

Defendant Courtney Smith touted the stock as a "double-your-money-pick."  (T. Long Dep.

Tr. at 44-46.)  On May 23, 2001, subsequent to the Long's purchase of Genesis shares,

4

investigative news reports exposed a relationship between Smith and Genesis, and traced

Genesis's attempts to conceal this relationship.  (Compl. ¶ 203.)  That relationship

allegedly involved Genesis paying Smith for his positive reviews of the company.  (Id. ¶¶

157-77.)

Lamb holds 100 shares of Genesis as well.  (Goodchild Decl. Ex. 8.)  Like Desai,

Lamb purchased her shares late in the class period, on September 20, 2001.  (Id.)

Plaintiffs assert three causes of action against Defendants in their Complaint.  First,

they allege that Defendants violated § 10(b) of the Securities and Exchange Act of 1934 by:

> (i) employing devices, schemes, and artifices to defraud; (ii) making untrue
> statements of material facts or omitting to state material facts necessary in
> order to make the statements made, in light of the circumstances under which
> they were made, not misleading; and (iii) engaging in acts, practices, and a
> course of business that operated as a fraud or deceit upon Lead Plaintiffs and
> others similarly situated in connection with their purchases of Genesis stock
> during the Class Period.

(Compl. ¶ 262.)  Central to this claim is Plaintiffs' allegation that they suffered damages

because "in reliance on the integrity of the market, they paid artificially inflated prices for

Genesis stock.  Lead Plaintiffs and the Class would not have purchased Genesis stock at the

prices they paid, or at all, if they had been aware that the market prices had been artificially

and falsely inflated by defendants' materially misleading statements and manipulative

conduct."  (Id. ¶ 265.)

Second, Plaintiffs allege that Defendants are liable pursuant to § 20(a) of the Act in

that they acted "as controlling persons of Genesis, each of the Officer Defendants,

Ultimate Holdings, Khashoggi, and the Deutsche Bank Stock Loan Defendants." (Id. ¶ 272.)  This claim is dependant on a finding of liability for violation of § 10(b) of the Act.[2]

Finally, Plaintiffs allege that three of the defendants (Ultimate Holdings, Khashoggi, and El-Batrawi) violated § 20A of the Act by disseminating "materially false and misleading information to the public while selling their own shares at artificially inflated prices" and reaping millions of dollars in profits.  (Id. ¶¶ 276-80.)

## B.    Procedural Backdrop of Plaintiffs' Case

Beginning in October 2001, several putative class action lawsuits were commenced in the United States District Court for the Central District of California (the "California court"), asserting federal securities law claims arising out of Genesis's collapse.  The claims were similar to those asserted here.  Pursuant to the procedures put in place by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3), Desai sought appointment as lead plaintiff.[3]  In addition, institutional investors Horizon International, LLC ("Horizon") and Ferris, Baker Watts, Inc. ("FBW"), submitted a joint

---

[2]Section 20 of the Securities Exchange Act extends liability under § 10(b) and Rule 10b-5 to any "controlling person."  See In re NationsMart Corp. Sec. Litig., 130 F.3d 309, 320 (8th Cir. 1997) (citation omitted).

[3]Under the PSLRA, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . in accordance with this subparagraph."  15 U.S.C. § 78u-4(a)(3)(B)(i).  "The PSLRA creates a rebuttable presumption that the most adequate plaintiff is 'the person or group of persons that . . . has the largest financial interest in the relief sought by the class . . . and otherwise satisfies the requirements of Rule 23 of the federal Rules of Civil Procedure.'"  In re Quintus Sec. Litig., 201 F.R.D. 475, 481 (N.D. Cal. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc)).

application for appointment of lead plaintiffs.  While Horizon and FBW initially opposed

Desai's application for lead plaintiff (based, in part, on his status as an individual investor),

eventually the three filed a joint motion for lead plaintiff status.

      The California court initially denied the joint motion, citing concern over "the

typicality and adequacy of the lead plaintiff."  (Goodchild Decl. Ex. 10 at 3.)  However, in

response to further briefing from Desai and Horizon (FBW withdrew from the motion and

brought suit on its own behalf), the court granted the motion appointing the two parties as

lead plaintiffs of the class.  (Id., Ex. 13.)  The California court noted, however, that its

decision was made "[i]n light of the failure of any other party to apply for lead plaintiff."

(Id., Ex. 13 at 2.)  On June 9, 2003, the action was transferred to this Court and

consolidated for pre-trial purposes with the other related actions brought by individual

plaintiffs.

      Since the transfer of the action to this Court, Horizon withdrew as lead plaintiff of

the class.  (Id., Ex. 15.)  Prior to Horizon withdrawing, however, Plaintiffs' counsel added

Lamb and the Longs as class representatives.  Lamb and the Longs have not been

determined by the Court to be appropriate lead plaintiffs under the PSLRA.

## C.      The Legal Backdrop of Plaintiffs' Complaint

      As discussed above, Plaintiffs have brought a claim against Defendants under § 10(b)

of the Securities and Exchange Act of 1934.  Under § 10(b), it is unlawful for any person,

"directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any

security . . . any manipulative or deceptive device or contrivance in contravention of such

rules and regulations as the [SEC] may prescribe . . . ." 15 U.S.C. § 78j(b).  Section 10(b) is

not limited to a purchaser or seller of securities, but rather reaches any deceptive device

used "in connection with the purchase or sale of any security." Id.

Rule 10b-5, adopted by the SEC pursuant to its rulemaking authority, states that "[i]t

shall be unlawful for any person, directly or indirectly,"

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of material fact or to omit to state a material fact
necessary in order to make the statements made, in light of the circumstances
under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would
operate as a fraud or deceit upon any person, in connection with the purchase or
sale of any security.

17 C.F.R. § 240.10b-5.  Rule 10b-5 is coextensive in scope with § 10(b).  See Ernst &

Ernst v. Hochfelder, 425 U.S. 185, 214 (1978); Central Bank of Denver, N.A. v. First Int'l

Bank of Denver, N.A., 511 U.S. 164, 173 (1994).

To recover under Rule 10b-5, a plaintiff must establish:

1) that the defendant acted in a manner prohibited by the Rule, whether it be
that the defendant employed a device, scheme, or artifice to defraud, made
misrepresentations or omissions of material fact, or engaged in acts,
practices or courses of business that operate as a fraud or deceit; 2)
causation, often analyzed in terms of materiality and reliance; 3) damages;
and 4) that the fraudulent activity occurred in connection with the purchase
and sale of a security.

In re NationsMart Corp. Sec. Litig., 130 F.3d 309, 320 (8th Cir. 1997) (quoting Harris v.

Union Elec. Co., 787 F.2d 355, 362 (8th Cir. 1986)); see In re K-Tel Int'l, Inc. Sec. Litig.,

300 F.3d 881, 888 (8th Cir. 2002). "Reliance typically requires plaintiffs to prove that

alleged misrepresentations induced them to do something different from what they would

otherwise have done in making investment decisions."[4] NationsMart, 130 F.3d at 321

(citation omitted). With this backdrop in mind, the Court will consider Plaintiffs'

presentation on the issue of class certification.[5]

### Standard of Review

Class certifications are governed by Rule 23 of the Federal Rules of Civil

Procedure. The Court may certify a class action "only when it is satisfied after rigorous

analysis that all of Rule 23's prerequisites are met." Lockwood Motors, Inc. v. General

---

[4]Because this legal framework is determinative for purposes of the instant Motion, and the parties do not address Plaintiffs' claims under §§ 20(a) or 20A, the Court need not address the necessary showings under those claims.

[5]The Court notes that Plaintiffs' Motion for Class Certification has been in a precarious procedural position from its inception. This lawsuit was commenced in July 2002, with the filing of a Consolidated Amended Class Action Complaint in the California court. In June 2003, the action was transferred to this Court. Plaintiffs first filed a motion for class certification with a supporting brief in March 2004, but as a result of stipulations entered into by the parties (and for reasons not known to the Court), responsive briefing and a hearing on the motion were postponed. The initial motion was subsequently withdrawn, and the instant Motion was finally filed and noticed for hearing in February 24, 2005—more than two and one-half years after the commencement of the action. The hearing on the Motion was scheduled for May 2005, briefing on the Motion was not complete until May 23, 2005, and less than a week after the hearing on the Motion, briefing began on the motions for summary judgment in this and the seven other related cases on this Court's docket. Given the compressed nature of the proceedings, at that point the Court decided the most prudent course of action would be to hear the dispositive motions before ruling on the instant Motion. Following the summary judgment hearings, all of the related matters (excepting this action) were scheduled for a Court mediated settlement conference with Magistrate Judge Boylan. Settlement was effected in all but one of the related matters.

9

Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995).  Rule 23(a) sets out four threshold

prerequisites that must be satisfied before a party can obtain class certification:

> One or more members of a class may sue or be sued as representative parties
> on behalf of all only if (1) the class is so numerous that joinder of all
> members is impracticable, (2) there are questions of law or fact common to
> the class, (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class, and (4) the representative parties will
> fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); In re St. Jude Medical, Inc., 425 F.3d 1116, 1119 (8th Cir. 2005).  In

addition to the prerequisites of Rule 23(a), the movant must demonstrate that a class action

can be maintained under one of the three categories described in Rule 23(b).  Fed. R. Civ.

P. 23(b).

     The party seeking class certification bears the burden of establishing that it has

satisfied each of Rule 23's class certification requirements.  Lockwood Motors, 162

F.R.D. at 573.  Although a court may not decide the merits of a case at the class

certification stage, see Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), a

motion for class certification "generally involves considerations that are enmeshed in the

factual and legal issues comprising the plaintiff's cause of action," Coopers & Lybrand v.

Livesay, 437 U.S. 463, 469 (1978) (citations and internal quotations omitted).  The court

ultimately retains broad discretion in determining whether to certify a class under Rule 23.

See, e.g., Gilbert v. City of Little Rock, Ark., 722 F.2d 1390, 1399 (8th Cir. 1983).

**Analysis**

**A.     The Rule 23(a) Requirements**

### 1.       Numerosity

"In order to maintain a class action, Plaintiffs must show that the class of plaintiffs is so large that joinder of all members would be 'impracticable.'" In re Potash Antitrust Litig., 159 F.R.D. 682, 689 (D. Minn. 1995) (citing In re Federal Skywalk Cases, 680 F.2d 1175, 1178 (8th Cir. 1982)).  Although the Plaintiffs need not show that joinder of all class members would be impossible, they must show that it would be difficult.  See Lockwood Motors, 162 F.R.D. at 574 (citing Jenson v. Continental Fin. Corp., 404 F. Supp. 806, 809 (D. Minn. 1975)).

Plaintiffs assert that the trading volume of Genesis common stock was 167,740,200 shares, which is an average of 380,363 shares per day during the class period.  They claim that Genesis had more than 23 million shares of stock outstanding, and those shares were owned by "hundreds if not thousands of persons."  (Compl. ¶ 48.)  Defendants do not challenge the proposed class on numerosity grounds.[6]  Thus, the Court concludes that this requirement has been met.

### 2.       Commonality

---

[6] The Nomura Defendants address the numerosity requirement briefly in a footnote. (See Nomura Mem. in Opp'n at 17, n.6.)  They argue that because Plaintiffs allege Genesis stock was thinly traded, and that Defendants "massively intervened in the daily trading market for Genesis shares," Plaintiffs' claim that there are hundreds or thousands of class members is not credible.  The Court determines that this challenge to Plaintiffs' numerosity showing is insufficient and thus does not impact the Court's conclusion regarding this element of class certification.

The second provision of Rule 23(a) requires Plaintiffs to show "that there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While not every question of law and fact must be common to the entire class, Plaintiffs must show that the course of action giving rise to their cause of action affects all putative class members, or that at least one of the elements of that cause of action is shared by all of the putative class members. See Lockwood Motors, 162 F.R.D. at 575 (citing Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993)). Because commonality requires only one common question of law or fact, courts often find the requirement to be satisfied. See 5 Moore's Federal Practice, § 23.23[2].

This case links a common legal theory—securities law violations—to a common group—purchasers of Genesis shares. Defendants do not challenge class certification on commonality grounds. The Court therefore concludes that Plaintiffs satisfy the commonality requirement.

### 3.      Typicality

The third requirement of Rule 23(a) calls for the party seeking certification to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality under Rule 23(a)(3) suggests "there are other members of the class who have the same or similar grievances as the [representative] plaintiff." Chaffin v. Rheem Mfg. Co., 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotation omitted). Typicality is satisfied when the claims of the named

plaintiffs emanate from the same event or are based on the same legal theory as the claims

of the class members.  <u>Lockwood Motors</u>, 162 F.R.D. at 575.

      While the Court is aware that, in some circumstances, the test for typicality is

"fairly easily met so long as other class members have claims similar to the named

plaintiff," <u>DeBoer v. Mellon Mortg. Co.</u>, 64 F.3d 1171, 1174 (8th Cir. 1994) (citation

omitted), it is also clear that

> [a] district court must evaluate carefully the legitimacy of the named
> plaintiff's plea that he is a proper class representative under Rule 23(a).  The
> adequacy and typicality requirements serve as guideposts for determining
> whether maintenance of a class action is economical and whether the named
> plaintiff's claim and the class claims are so interrelated that the interests of
> the class members will be fairly and adequately protected in their absence.

<u>In re Milk Products Antitrust Litig.</u>, 195 F.3d 430, 436 (8th Cir. 1999) (internal quotations

omitted).  A careful evaluation of this requirement is "necessary to comport with the

requirements of due process."  <u>S&S Forage & Equip. Co. v. Up North Plastics, Inc.</u>, 2002

WL 31718409, at *2 (D. Minn. Nov. 21, 2002) (citation omitted).  Furthermore, "where

the representative parties are subject to unique defenses, their claim is not typical of the

class."  <u>Irvin E. Schermer Trust by Kline v. Sun Equities Corp.</u>, 116 F.R.D. 332, 336-37 (D.

Minn. 1987).  "It is not necessary that the defense asserted against the proposed class

representative ultimately succeed.  Rather, the presence of even an arguable defense

peculiar to the proposed representative may destroy typicality of the class . . . ."  <u>Id.</u>

(citation omitted).

Defendants challenge Plaintiffs' ability to satisfy the typicality requirement.  They base their argument on Desai's testimony that he bought his 50,000 shares of Genesis stock in reliance on his understanding that the market did <u>not</u> accurately price the stock at the time he bought it.  They further argue that the disclosure in the news of information connecting Smith to Genesis prior to Desai and Lamb's purchase of Genesis shares further exposes those plaintiffs to unique defenses.  These factors, according to Defendants, create conflict within the class representatives and the purported class fatal to certification. (Deutsche Bank Mem. in Opp'n at 8-9.)

The allegations in this case indicate that various plaintiffs may be subject to unique defenses regarding their reliance on the integrity of the market.  For example, a significant component of Plaintiffs' case is the allegation that the

> Genesis Defendants . . . and Courtney Smith took part in a scheme commencing on December 21, 1999 to inflate the price of Genesis shares by having financial commentator Smith recommend Genesis stock during his frequent television appearances in exchange for 216,000 shares of Genesis stock.

(Compl. ¶ 3(a).)  On May 23, 2001, however, before either Desai or Lamb purchased their Genesis shares, Bloomberg published an investigative report exposing information regarding the relationship between Smith and Genesis that involved Genesis paying Smith for his promotion of its stock.[7]  (Compl. ¶¶ 157-77.)  Such public disclosures will likely

---

[7]The Complaint details other public disclosures prior to Desai and Lamb's purchase of Genesis shares regarding short interests in Genesis's stock and Genesis's efforts to "squeeze" short sellers by urging shareholders to transfer their Genesis stock to personal accounts.  (<u>See, e.g.</u>, Compl. ¶¶ 183-88.)  According to Defendants, these disclosures

subject Desai and Lamb to "the defense of unjustified reliance," and this calls into question their suitability as class representatives. <u>Schermer Trust</u>, 116 F.R.D. at 337; <u>see</u> <u>Davidson v. Wilson</u>, 973 F.2d 1391, 1400 (8th Cir. 1992) (noting that justifiable reliance is a required showing under Rule 10-b5 misrepresentation claim, and that the plaintiff's "opportunity to detect the fraud" is a relevant factor in determining whether reliance was in fact justified). Accordingly, the Court determines that Plaintiffs have not satisfied their burden of establishing that they are appropriate class representatives under the typicality requirement.[8] However, out of an abundance of caution, the Court will consider the remainder of Plaintiffs' showing under Rule 23(a) and (b).

### 4.   Adequacy

The fourth requirement of Rule 23(a)—adequacy of representation—is related to the typicality requirement. If the representative parties have interests or claims that are significantly different than those of the majority of the of class members, then neither typicality nor adequacy is present. <u>See</u> <u>Potash</u>, 159 F.R.D. at 692; <u>In re Wirebound Boxes Antitrust Litig.</u>, 128 F.R.D. 268, 270 (D. Minn. 1989). To satisfy the adequacy requirement, Plaintiffs must show "that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each

---

create further defenses against the claims of Desai and Lamb.

[8]In addition, the circumstances under which Desai purchased his shares of Genesis indicate that he is not ideally situated to pursue a claim under the same legal theory as the other class representatives and members. The Court will discuss this weakness in Plaintiffs' certification showing in its consideration of the Rule 23(b)(3) requirements of predominance and superiority. (<u>See</u> infra pp. 23-27.)

representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." Id.  While, generally speaking, consideration of the adequacy requirement tends to focus primarily on the competence and experience of class counsel, Rule 23(a)(4) does warrant some inquiry into the personal characteristics of the proposed representatives as well.  Sondel v. Northwest Airlines, Inc., 1993 WL 559031, at *9 (D. Minn. Sept. 30, 1993); see Gibb v. Delta Drilling Co., 104 F.R.D. 59, 75 (N.D. Tex. 1984).

Defendants challenge Plaintiffs' adequacy as class representatives by claiming that Plaintiffs are "figurehead" plaintiffs—that they "lack the incentive and/or ability to direct the litigation and are only too willing to defer to their lawyers."  (Nomura Mem. in Opp'n at 13.)  Specifically, Defendants argue that Plaintiffs (1) are unfamiliar with the basic claims and parties involved in this litigation; (2) are unaware of the material events that have occurred in this litigation; (3) have not supervised or monitored counsel's performance, displaying a lack of incentive or interest in directing the litigation; and (4) do not have an understanding of "what it really means to be a fiduciary charged with protecting the rights of absent class members."[9]  (Id. at 14.)

---

[9]Defendants appear to advocate that the Court adopt a heightened standard under the adequacy prong of Rule 23(a) due to the applicability of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3), to this case.  The Court rejects this invitation to heighten the requirements for class certification under Rule 23, as "the PSLRA did not modify [Rule] 23, and only relates to the selection of an otherwise eligible plaintiff as the lead class plaintiff."  Franklin High Yield Tax-Free Income Fund v. The City of Baudette, 1999 WL 33912055, at *5 (D. Minn. Sept. 13, 1999).

Plaintiffs respond in two ways.  First, Plaintiffs argue that they need not demonstrate the depth of their personal knowledge regarding the details of the litigation.  Rather, they "need only demonstrate that their counsel is qualified and that no conflicts exist between the plaintiffs and the class members."  (Reply Mem. at 4.)  Next, Plaintiffs assert that Defendants misconstrue their deposition testimony and, that, properly read, Plaintiffs' testimony establishes that they have sufficient knowledge of the litigation to be class representatives.  (See id.)

"As with all factors in a motion to certify a class, the movant bears the burden of proof on the question of adequacy."  Ogden v. Americredit Corp., 225 F.R.D. 529, 532-33 (N.D. Tex. 2005) (citation omitted).  And, while "[c]lass representatives in complex cases are not required to have the detailed level of firsthand knowledge of facts or law that defendants seek to impose," In re Select Comfort Corp. Sec. Litig., 202, F.R.D. 598, 609 (D. Minn. 2001), the Court agrees with Defendants that Plaintiffs must make some showing of personal commitment to and knowledge of the litigation, see, e.g., Sondel, 1993 WL 559031, at *8-9; Ogden, 225 F.R.D. at 532-33.

The Court determines that Plaintiffs have, at best, made a minimal showing of adequacy on the part of the proposed representatives.  The suggested class representatives have not demonstrated a deep understanding of this action when questioned in their depositions.  (See, e.g., Lamp Dep. Tr. at 49-50 (testifying that she had not read the Complaint in this action, nor reviewed any of the papers filed with the Court in connection with the litigation); C. Long Dep. Tr. at 69, T. Long Dep. Tr. at 37-38 (testifying that they

did not know who the other proposed class representatives were); Desai Dep. Tr. at 146-49

(testifying that he did not know who the other proposed class representatives were or why

they were added); C. Long Dep. Tr. at 77-79 (testifying that he had not taken any action to

monitor class counsel's performance beyond his "faith in the job that they're doing").)  Nor

did plaintiffs indicate a strong desire to participate in the decision-making regarding the

direction and strategy of the litigation implemented by their counsel.  (See, e.g. id.; see also

Desai Dep. Tr. at 137-39 (testifying that he was unaware of his attorneys' decision not to

pursue claims against certain defendants, and that his attention to the progress of the case

depended on "if I have time, or . . . what I'm doing"); C. Long Dep. Tr. at 84 ("Q: "other than

your faith in your counsel, you have no idea . . . whether your counsel is properly

prosecuting this lawsuit?"  A: "That may be correct.").)

        The Court also notes that only one of the currently-named plaintiffs—Desai—was

granted lead plaintiff status by the California court, and that decision came only after the

court noted it was "unsatisfied with the applicants' responses to inquiries related to the

allegations of fraud and Rule 23 adequacy and typicality."  (Goodchild Aff. Ex. 10 at 4.)

The other plaintiff eventually approved by the California court—Horizon—withdrew from

its position as a class representative on December 21, 2004 (the day before it was

scheduled to be deposed).[10]  (Id. Ex. 15.)  Lamb and the Longs were added as proposed class

_____

        [10]The California court noted that the decision to ultimately approve Desai and
Horizon as lead plaintiffs of the proposed class was made "[i]n light of the failure of any
other party to apply for lead plaintiff."  (Goodchild Aff. Ex. 13.)  The Court does not
interpret the order establishing Desai and Horizon as lead plaintiffs as a ringing

representatives in June 2004, and they only own 200 shares of Genesis stock between them.  (Id. Exs. 7, 8, 14; see id. Ex. 10 at 3 (order denying lead plaintiff status to Desai and others, noting the PSLRA's "rebuttable presumption that the most adequate plaintiff is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" (quoting the PSLRA)).)

Despite Plaintiffs' weak showing on the adequacy prong, however, the Court determines that Plaintiffs have made a showing of involvement in the action minimally sufficient to meet their burden.[11]  Accordingly, the Court will move on to consider Plaintiffs' required showing under Rule 23(b).

**B.      Rule 23(b) Analysis**

In addition to satisfying all the criteria of Rule 23(a), a party seeking class certification must satisfy one of the requirements of Rule 23(b).  Plaintiffs claim they have satisfied Rule 23(b)(3), which requires (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

---

endorsement of their adequacy.

[11]The Court's conclusion that Plaintiffs' showing on the Rule 23(a) adequacy factor is thin, while not dispositive of the ultimate issue, further bolsters the Court's conclusion that certification is not appropriate here.  The Court is particularly mindful of this weakness, as the adequacy "requirement's purpose is to protect the legal rights of absent class members."  London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003) (internal quotation omitted).

"[T]he predominance requirement of subdivision (b)(3) is 'far more demanding' than the 'commonality' requirement of subdivision (a)."  In re The Hartford Sales Practices Litig., 192 F.R.D. 592, 604 (D. Minn. 1999) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)).  Furthermore, there are no bright lines for determining whether common questions predominate.  In re Workers' Compensation, 130 F.R.D. 99, 108 (D. Minn. 1990).  Instead, considering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.  See id.

Here, Defendants attack Plaintiffs' showing (or lack thereof) on issues regarding proof of reliance under Rule 10b-5.  As discussed above, Rule 10b-5 was promulgated by the SEC pursuant to § 10(b) of the Securities Exchange Act of 1934 and it prohibits fraudulent conduct in the sale and purchase of securities.  NationsMart, 130 F.3d at 320 (citations omitted).  To recover under Rule 10b-5, a plaintiff must establish:

> 1) that the defendant acted in a manner prohibited by the Rule, whether it be that the defendant employed a device, scheme, or artifice to defraud, made misrepresentations or omissions of material fact, or engaged in acts, practices or courses of business that operate as a fraud or deceit; 2) causation, often analyzed in terms of materiality and reliance; 3) damages; and 4) that the fraudulent activity occurred in connection with the purchase and sale of a security.

Id. (quoting Harris, 787 F.2d at 362).  "Reliance typically requires plaintiffs to prove that alleged misrepresentations induced them to do something different from what they would otherwise have done in making investment decisions."  Id. at 321 (citation omitted).

In the securities class certification context, issues surrounding proof of reliance can play a crucial role in a court's decision as to whether common questions will predominate. Accordingly, "a district court must perform sufficient analysis to determine that class members' fraud claims are not predicated on proving individual reliance." Unger v. Amedisys, Inc., 401 F.3d 316, 321 (5th Cir. 2005). "If the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement." Id. (citations omitted).

In part because the need to show individualized reliance could eviscerate attempts to bring class actions, courts have developed situations in which reliance may be presumed. "In a case involving a failure to disclose information to investors, courts will presume reliance if the omitted information is shown to be material." NationsMart, 130 F.3d at 321 (citing Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972)). Another way that courts presume reliance, prevalent and especially useful in the context of class actions, is "under a fraud-on-the-market theory, 'where materially misleading statements

have been disseminated into an impersonal, well-developed market for securities . . . .'"[12]

Id. (quoting Basic, Inc. v. Levinson, 485 U.S. 224, 247 (1988)).

Plaintiffs have waffled in their presentation of the theory of their case.  In their

Reply Memorandum, Plaintiffs rejected for the first time the fraud-on-the-market theory.

(Reply Mem. at 16 ("plaintiffs are not relying upon the fraud-on-the-market presumption of

indirect reliance established in Basic, Inc. v. Levinson").)  In fact, Plaintiffs concede that

the market for Genesis stock was not "efficient" as that term is used in establishing a fraud-

on-the-market presumption of reliance, and a showing of efficiency is essential to the

applicability of this presumption.[13]  (See Reply Mem. at 18.[14])  This pronouncement is

---

[12]The Eighth Circuit, in NationsMart, also noted that "[s]ome courts recognize a fraud-created-the-market theory, where reliance may be presumed if the defendants' fraudulent activity is so pervasive that it goes to the very existence of the securities and the validity of their presence on the market."  130 F.3d at 321 (internal quotations and alternations omitted).  The court also pointed out, however, that "[n]ot all courts have accepted the fraud-created-the-market theory" and the Eighth Circuit did not endorse the theory itself.  Id.; see also Franklin High Yield, 1999 WL 33912055, at *2 (noting that the Eighth Circuit has not adopted the theory).  Plaintiffs do not invoke this method of presuming reliance in support of their Motion.

[13]In some circumstances, "a demonstration of an efficient market is a prerequisite for certification," because "[w]ithout an initial demonstration of market efficiency, there is no assurance that the available material information concerning the stock translates into an effect on the market price and supports a classwide presumption of reliance."  Unger, 401 F.3d at 322.

[14]Plaintiffs do, however, state in a footnote that "[e]ven if a showing of an 'open and developed market' were to be required in this action, most of the factors [required to make such a showing] are satisfied."  (Reply Mem. at 18 n.20.)  However, the Court notes that "courts have frequently applied rigorous, though preliminary, standards of proof to the market efficiency determination."  Unger, 401 F.3d at 322 (citations omitted).  The Court determines that this cursory treatment of the issue does not satisfy Plaintiffs' burden to show that the market for Genesis stock was efficient.

inconsistent with the facts Plaintiffs alleged in their Complaint, the latest version of which was filed a month <u>after</u> they filed their Reply Memorandum.  (Compl. ¶ 41 ("During the Class Period, Genesis' common stock was listed and actively traded on the NASDAQ, a highly developed and efficient market. . . . [I]nformation concerning Genesis entered the public marketplace, which promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in Genesis' stock price.").)  It is also inconsistent with the theory Plaintiffs advanced in their responses to interrogatories, which they completed a month <u>before</u> filing their Reply Memorandum. (<u>See, e.g.</u>, 5/16/05 Toscano Aff. Ex. 1 (in Plaintiffs' Objections and Responses to Defendant Scott Reed's First Set of Interrogatories, stating "their class action for relief asserting market manipulation is based upon the 'fraud-on-the-market' theory of liability, thereby obviating the need to delineate each individual plaintiff's specific 'reliance' upon 'false statements, (mis)representations, omission(s) of material fact, or any other conduct, use of a deceptive device or market manipulation.'" (citing <u>Basic</u>)).)

While Plaintiffs have rejected the fraud-on-the-market theory for purposes of this Motion, they continue to claim that they "relied upon the integrity of the market, which had been secretly corrupted" by Defendants.  (Reply Mem. at 16.)  However, Plaintiffs do not adequately explain how they expect to prove the allegations in their Complaint—that Plaintiffs relied on the integrity of the market price in purchasing their stock—when Desai explicitly disclaims this notion.  Desai bought 50,000 shares of Genesis stock on September 25, 2001, the last day of the class period.  (Desai Dep. Tr. at 65.)  He made the

decision to buy the stock because he believed that "there was just mass confusion among traders" regarding whether or not the company had spilt the stock that day.  (Id. at 171.) Thus, he thought the stock was mis-priced due to the confusion stemming from the previous announcement of a stock split, and the subsequent decision by the company not to implement that plan.  It appears to the Court that Desai's testimony contradicts the allegations in Plaintiffs' Complaint that "[a]t the times Lead Plaintiffs . . . purchased Genesis stock, they relied on the integrity of the market price of Genesis publicly traded stock."  (Compl. ¶ 45.)  This clearly raises issues of fact particular to Desai (and possibly other proposed class members) and these issues of fact are at odds with Plaintiffs' theory of reliance.[15]  See, e.g., Polymedica Corp. Sec. Litig., 224 F.R.D. 27, 43-44 (D. Mass. 2004) (excluding "short sellers" from securities class action because "[s]hort sellers may not rely on the 'fraud on the market' presumption of reliance").

While the Court is aware of the conflicting views as to whether a plaintiff's trading strategy influences his or her ability to establish a fraud-on-the-market presumption of reliance, compare, id. and Gilford Partners, L.P. v. Sensormatic Electronics Corp., 1997 WL 757495, at *8 (N.D. Ill. Nov. 24, 1997) (noting that plaintiff could not rely on the fraud-on-the-market presumption of reliance where he "not only distrusted the integrity of

---

[15]The Court does not reach the question of whether Desai would ultimately be able to establish transaction causation under § 10(b).  The Court is not passing on the merits of Desai's claims.  The issues raised by his claims, however, demonstrate that issues unique to him and those similarly situated members of the class create a conflict with the other proposed class representatives and members, where the theory of the case advanced by Plaintiffs is reliance on the integrity of the market price.

the market price, but affirmatively believed that information had been fraudulently released to or withheld from the market"), with Taubenfeld v. Career Educ. Corp, 2004 WL 554810, at *4 (N.D. Ill. Mar. 19, 2004) (rejecting argument that "day traders may not be able to rely on the 'fraud on the market' theory of reliance"), it notes that Plaintiffs have rejected that mechanism of presuming reliance, and on a motion for class certification the inquiry is whether Plaintiffs have satisfied the Court that the "proposed [class is] sufficiently cohesive to warrant adjudication by representation . . . [and that] there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis . . . ." Sonmore v. Checkrite Recovery Services, Inc., 206 F.R.D. 257, 264 (D. Minn. 2001) (internal quotations omitted).  The Court determines that Plaintiffs have failed to satisfy their burden to show that common issues of fact and law will predominate, given that their theory of reliance does not apply to Desai; this creates a schism between and among class representatives and members.[16]

Plaintiffs also contend that the Court should "simply assume the truth of the allegations of reliance set forth in [their] Complaint."  (Reply Mem. at 17.)  It is

---

[16]Plaintiffs also urge that Affiliated Ute Citizens of Utah v. U.S., 406 U.S. 128 (1972), supports their contention that their reliance for purposes of § 10(b) should be presumed.  (See Reply Mem. at 21.)  Affiliated Ute established that where a case involves "a failure to disclose information to investors, courts will presume reliance if the omitted information is shown to be material."  In re NationsMart Corp. Sec. Litig., 130 F.3d at 321. However, Plaintiffs gloss over the fact that "[t]he presumption of reliance in failure-to-disclose cases has been limited to situations where the parties deal directly with one another in face-to-face transactions."  Id. (citation omitted).  Plaintiffs do not make any allegations of face-to-face transactions; thus, the presumption created by Affiliated Ute is not applicable.

established, however, that because of "the important due process concerns of both plaintiffs and defendants inherent in the certification decision, the Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites." Unger, 401 F.3d at 320-21 (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)).  This is supported by the plain text of Rule 23, which "requires the court to 'find,' not merely assume, the facts favoring class certification." Id. at 321.  Thus, the Court determines that in the context of this Motion, the allegations in Plaintiffs' Complaint regarding reliance under § 10(b) are not sufficient to meet their burden.

Even if the Court did assume the truth of Plaintiffs' allegations for purposes of this Motion, it is not clear how this would satisfy their burden under Rule 23(b)(3) to establish that common issues would predominate over individual issues within the class.  They allege that "Lead Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Genesis stock."  (Compl. ¶ 265.) They also allege that "Lead Plaintiffs and the Class would not have purchased Genesis stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' materially misleading statements and manipulative conduct."  (Id.)  According to Plaintiffs, "[b]ecause the Court should simply credit these allegations as true at this preliminary stage of the litigation, defendants' reliance-based attacks on the class certification should be rejected."  (Reply Mem. at 18.)

Plaintiffs' allegations that each member of the class relied on the integrity of the market do not, however, provide the Court with the mechanism by which to presume that

each class member did so.  Plaintiffs have not provided the Court with any authority to

establish that reliance on the integrity of the market price, without a showing that the

market was efficient, may create a class-wide presumption of reliance for purposes of a

§ 10(b) action.[17]  Thus, the allegations in Plaintiffs' Complaint do not change the fact that

"if a class were certified, justifiable reliance would have to be shown by each plaintiff, and

the degree of proof would vary widely."  Franklin High Yield, 1999 WL 33912055 at *5.

The Court determines that the burden of possibly determining issues of individual reliance

as to each of "hundreds, if not thousands" of class members, (Mem. in Supp. at 5), would

lead to individual issues predominating over common issues in this action.

## C.      Conclusion

       The Court determines that Plaintiffs have failed to satisfy their burden of

establishing that a class action is an appropriate mechanism for trying this case.  Plaintiffs

have not presented a showing sufficient to convince the Court that issues of law or fact

common to the members of the class predominate over any questions affecting only

individual members.  See Fed. R. Civ. P. 23(b)(3).  Nor have Plaintiffs established

typicality under Rule 23(a).  In addition, Plaintiffs' weak presentation on the adequacy

---

[17]Plaintiffs rely on In re Blech Securities Litigation, 961 F. Supp. 569, 586
(S.D.N.Y. 1997) as support for their argument that they may establish class-wide reliance
on the integrity of the market.  But the court in Blech recognized that the fraud-on-the-
market theory applied in that case.  Id. at 586 (applying the fraud on the market theory and
noting it "permits a plaintiff to rely on the integrity of open, well-developed markets rather
than requiring proof of direct reliance on a defendant's conduct").  As discussed above,
Plaintiffs do not espouse the fraud on the market theory in the case.

prong of Rule 23(a) further bolsters the Court's conclusion that certification is not

appropriate in this case.  Accordingly, the Court will deny the instant Motion for Class

Certification.

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**ORDERED** that Plaintiffs' Motion for Class Certification (Doc. No. 217) is **DENIED**.


Dated: December 5, 2005                          s/Richard H. Kyle
                                                 RICHARD H. KYLE
                                                 United States District Judge